Citation Nr: 1134094 
Decision Date: 09/12/11 Archive Date: 09/22/11

DOCKET NO. 97-03 302 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUE

Entitlement to an increased evaluation for residuals of a head injury, to include a rating in excess of 30 percent for neurological manifestations of a pain disorder and a separate rating for chronic fatigue syndrome.


REPRESENTATION

Appellant represented by: Jeany Mark, Attorney at law


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

M. C. Graham, Counsel
INTRODUCTION

The appellant is a Veteran who served on active duty from June 1944 to June 1946. This matter was originally before the Board of Veterans' Appeals (Board) on appeal from a November 1994 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia. A March 2004 Board decision denied the Veteran an increased rating for a pain disorder, manifested by headaches, associated with psychological factors and a history of traumatic encephalopathy. The Veteran appealed the denial to the United States Court of Appeals for Veterans Claims (Court). In March 2005, the Court issued an order that granted a Joint Motion for Remand to the Board (Joint Motion) filed by counsel for both parties, vacated the Board's March 2004 decision, and remanded the matter of the rating for the pain disorder to the Board for action in compliance with the Joint Motion. In November 2005 the Board remanded the matter to the RO for additional development.

In June 2006, a Travel Board hearing was held before the undersigned on the issue of service connection for depression. The Veteran was represented at that hearing by his agent. A transcript of the hearing is associated with the claims file.

In October 2006, the Board denied a rating in excess of 30 percent for pain disorder. The Veteran appealed this decision to the Court. In September 2007, the Court issued an order that vacated the October 2006 Board decision and remanded the matter on appeal for readjudication consistent with instructions outlined in a September 2007 Joint Motion by the parties. In July 2008, the Board remanded the case for further development of the evidence. 

In May 2009, the Board denied a rating in excess of 30 percent for neurological manifestations of a pain disorder and separately granted service connection for a chronic adjustment disorder with mixed emotional features. The Veteran appealed the denial of the increased rating to the Court. In June 2010, the Court issued an order that vacated the increased rating portion of the May 2009 Board decision and remanded the matter on appeal for readjudication consistent with the instructions outlined in the June 2010 Joint Motion by the parties. In December 2010 the Board remanded this matter for further development. 

The issue of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) was the subject of a separate remand by the Board in December 2010 and is still in remand status.

The Board notes that the issue was originally characterized as an increased rating for pain disorder, as manifested by headaches associated with psychological factors and a history of traumatic encephalopathy. The issue was then recharacterized by the Board in May 2009 as two issues (1) an increased rating for neurological manifestations of a pain disorder and (2) a separate service connection issue for a related psychiatric disability. Given that the Veteran initially claimed a higher rating for the broadly-defined "residuals of a head injury" (see November 1994 statement from the Veteran); the fact that the Board has separately granted service connection for a chronic adjustment disorder with mixed emotional features; and the fact that the Board has remanded the case for further development on several occasions to address whether the Veteran has chronic fatigue syndrome related to his service-connected neurological disorder or his head injury in service, the issue is more appropriately characterized as stated above.

The evidence shows the Veteran may have three separate disabilities - a neurological pain disorder manifested by headaches, a separate psychiatric diagnosis, and a separate immune disorder. Hence, the Board has recharacterized the issue accordingly. This recharacterization of the issue does not prejudice the Veteran as it potentially provides for separately compensable ratings based on neurological, psychiatric, and immunological disabilities.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010) 38 U.S.C.A. § 7107(a)(2) (West 2002).

The appeal is REMANDED to the Department of Veterans Affairs Regional Office. VA will notify the appellant if further action on his part is required.

REMAND

The 2010 remand requested an addendum opinion from the VA physician who examined the Veteran in October 2008, or, if that physician was unavailable, the RO was requested to arrange for the Veteran to undergo an infectious, immune, and nutritional disabilities examination. The 2008 examiner was apparently unavailable (his name is not listed in the on-line physicians list for the Salem VA Medical Center), so a VA examination was scheduled in March 2011. In March and again in July 2011 the Veteran informed VA personnel that he could not attend a scheduled examination as he was too sick to attend and he would not be able to attend any time soon.

It is noted that the Board denied the claim in 2006 on the basis that the Veteran failed to report for a scheduled VA examination. The 2007 Joint Motion noted that "the duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." Wood v. Derwinski, 1 Vet. App. 190, 193 (1991).

The regulation requiring submission to VA examination when VA deems it necessary requires VA to proceed to adjudicate original claims for service connection on the available evidence when a claimant fails to report without good cause. 38 C.F.R. § 3.655(a), (b). The same regulation requires VA to deny a claim for increased rating when VA deems examination necessary and the claimant fails to report without good cause. Id. The requirement to adjudicate or to deny is not discretionary, the regulation states, "shall be rated," and "shall deny," as to service connection and increased rating claims respectively.

As noted in the 2007 Joint Motion and the 2006 Board decision, the Veteran also did not report for VA examinations scheduled in 1999 and 2005. The 2007 Joint Motion noted "[a]ppellant's counsel has represented that she has reminded her client of his obligation to attend scheduled VA medical examinations, and that Appellant has every intention of attending future VA examinations." (emphasis added)
If the Veteran actually was unable to report for the 2010 examination for medical reasons, VA should know it. The record contains no medical treatment records since 1999. This remand will afford him the opportunity to show good cause for failure to report for examination. 

The Board is aware that this matter has now been pending more than 17 years, and that the case is advanced on the Board's docket. Notably, the inordinate delay thus far has primarily been due to the Veteran's own failure to cooperate (despite his attorney's assurances that he will do so) with development which he has sought and which is necessary to properly adjudicate his claim (see 2007 Joint Motion). Expeditious handling is dependent on his cooperation. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). Expedited handling is requested.)

1. Request the Veteran to provide the names and addresses of all healthcare providers, inpatient and outpatient, VA and non-VA, who have treated him since 1999. After obtaining any necessary authorization from him, the RO should attempt to obtain any records identified by the Veteran.

2. If the aforementioned records show treatment and/or medical cause why the Veteran cannot report for VA examination, the RO is requested to determine the feasibility of having a VA physician conduct an examination in the Veteran's home. If a VA examination is feasible, the claims folder should be reviewed by the examiner. Specifically, the examiner:

a. shall evaluate the severity of the Veteran's service-connected neurological manifestations of a pain disorder; and 
b. shall determine whether the Veteran has a diagnosis of chronic fatigue syndrome (CFS). If so, the examiner shall opine as to whether it is at least as likely as not that the diagnosed CFS is related to his service or to his service-connected pain and/or psychiatric disorders, to include whether his service-connected disorders aggravate said condition. If so, any fatigue syndrome symptoms should be described in detail, both in terms of their nature and their frequency (and, if possible, quantified in terms of the percentage by which they restrict the Veteran's routine daily activities, and/or the lengths of any periods of time of incapacitation per year).

The Veteran's claims files must be reviewed by the examiner in conjunction with the examination. The rationale for all opinions should be provided. 

3. If a VA physician is unable to conduct an examination in the Veteran's home, the RO should arrange for any and all appropriate development (to include securing, with the Veteran's cooperation, reports of all medical treatment he has received while this matter has been pending), and make an initial determination as to whether the Veteran has actually been confined to the premises of his home. 

4. Thereafter, if so and if a VA physician was unable to conduct an examination in the Veteran's home, present the claims file to a physician for a medical opinion. After reviewing the claims files in full, the physician should:
a. State whether it is as likely as not that the Veteran's disabilities render him housebound; 
b. Evaluate the severity of the Veteran's service-connected neurological manifestations of a pain disorder; and
c. Determine whether the Veteran has a diagnosis of chronic fatigue syndrome (CFS). If so, the examiner shall opine as to whether it is at least as likely as not that the diagnosed CFS is related to his service or to his service-connected pain and/or psychiatric disorders, to include whether his service-connected disorders aggravate said condition. If so, any fatigue syndrome symptoms should be described in detail, both in terms of their nature and their frequency (and, if possible, quantified in terms of the percentage by which they restrict the Veteran's routine daily activities, and/or the lengths of any periods of time of incapacitation per year).

The physician is also asked to provide the rationale for all opinions should be provided.

5. The RO should ensure that the development sought above is completed in its entirety. Then, adjudicate the separate issue of whether service connection for chronic fatigue syndrome is warranted and re-adjudicate the increased rating claim. [If the Veteran is not found to be housebound, and fails to report for examination scheduled in connection with his increased rating claim, such claim must (as mandated by the regulation) be processed under 38 C.F.R. § 3.655.]. If either remains denied, the RO should issue an appropriate SSOC and afford the Veteran and his attorney ample opportunity to respond. The case should then be returned to the Board, if in order, for further review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112.


_________________________________________________
GEORGE R. SENYK
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2010).